IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

WILLIAMS SOLUTIONS, INC., )
)
Plaintiff, ) 8:09CV97
)
v. )
)
CAMBIAN BUSINESS SERVICES, INC., ) MEMORANDUM AND ORDER ON
MARK DOSTIE, and CAMBIAN NET ) DEFENDANTS' MOTION TO DISMISS
MARKETS, INC., )
)
Defendants. )
)

On January 6, 2009, Plaintiff Williams Solutions, Inc. (Williams Solutions) filed a complaint against Defendants Cambian Business Services, Inc. (Cambian) and Mark Dostie (Dostie) in the District Court of Lancaster County, Nebraska. (See filing 1, Ex. A.)[1] The defendants filed a notice of removal on March 16, 2009, (see filing 1), and on April 22, 2009, the defendants moved to dismiss certain portions of the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), (see filing 16). I find that the defendants' motion to dismiss must be granted in part.

## I.    BACKGROUND

The complaint alleges as follows. Williams Solutions is a Nebraska corporation with its principal place of business in Lincoln, Nebraska. (Compl., filing 1, Ex. A, ¶ 1.) It "specializes in developing, marketing, and selling optometric software," and it "is a wholly-owned subsidiary of Professional Marketing Services, Inc. ("PMSI") d/b/a The Williams Group." (Id.) Cambian is a Canadian corporation with its principal place of business in Surrey, British Columbia, Canada. (Id. ¶ 3.) Cambian is alleged to be "an affiliated entity of Cambain Net," which is "a business

---

[1]The complaint also names Cambian Net Markets, Inc., as a defendant. (See filing 1, Ex. A.) I note, however, that there is no indication that Cambian Net Markets has been served with process, and it has not appeared in this litigation.

that specializes in information technology solutions that transform fragmented, inefficient environments into streamlined, interoperable, highly automated processes with the capacity for exponential growth." (Id. ¶¶ 2-3.) Dostie resides in British Columbia, Canada, and "holds himself out as a software engineer with experience in software development, software engineering and database management." (Id. ¶ 4.)

Sometime early in 2005, Dostie contacted The Williams Group regarding the development of a new optometry software product. (Compl., filing 1, Ex. A, ¶ 5.) Dostie "represented that Cambian would be able to act as the primary business entity to foster and coordinate the development" of the software. (Id.) On or about April 21, 2005, Dostie "submitted a proposal on behalf of Cambian" concerning the project. (Id. ¶ 6.) The proposal represented that Dostie and Cambian would "prepare a software product that was cheaper to maintain and deploy with additional features not available in the software program [that The] Williams Group was utilizing at the time." (Id.) The proposal also represented that "the project would be very cost-efficient and provide a strong software base for [The] Williams Group to gain better market acceptance"; that "the Optometry Software would be completed ahead of schedule"; that "Dostie would be hired as project manager"; and that "the Optometry Software would be developed in six months and the total cost would be approximately $324,000.00 Canadian Dollars." (Id.)

Relying on this proposal, The Williams Group entered into an agreement with Cambian for the development of the software. (Compl., filing 1, Ex. A, ¶ 7.) On April 25, 2005, The Williams Group made a payment of $12,600.00 (Canadian), and "Dostie commenced work on the pre-start phase" of the project. (Id.) On June 1, 2005, a "supply arrangement agreement memorializing the terms set forth by Cambian and Dostie in the [p]roposal was . . . executed." (Id.) In the supply arrangement, Cambian "warranted [that] it was competent to perform the services defined therein . . . and that it had the necessary qualifications . . . to perform" those services. (Id. ¶ 9.) The supply arrangement also specified that "all work performed by Cambian would be governed by 'Call-ups' as memorialized in underlying Contract Work Authorization agreements." (Id. ¶ 8.) At some unspecified time, Williams Solutions was "identified as the legal entity that would be bound by" the supply arrangement. (Id. ¶ 7.)

2

The parties anticipated that the software would be completed by November 15, 2005. (Compl., filing 1, Ex. A, ¶ 9.)  On or about January 26, 2006, Cambian sent the software to Williams Solutions and represented that it was "ready for marketplace distribution to third-party purchasers."  (Id. ¶ 10.)  Williams Solutions tested the software "and discovered numerous deficiencies and problems indicating [that] the [software] was unfit for sale."  (Id.)  Cambian then attempted to remedy the software's deficiencies, but it charged Williams Solutions "a substantial amount for the repairs."  (Id. ¶ 11.)

In June 2006, Cambian informed Williams Solutions that the repairs to the software were complete, and Williams Solutions began to sell the software to third parties.  (Id. ¶ 12.)  Shortly thereafter, Williams Solutions began to receive "frequent and varied complaints" about the software from its customers, and a "significant" number of these customers returned the software.  (Id.)  Between July 2006 and August 2008, Cambian attempted to repair the software "and continued to charge Williams Solutions a substantial amount for" its unsuccessful efforts. (Id. ¶ 13.)  Williams Solutions claims that since June 1, 2005, it has made payments to Cambian in an amount exceeding $1,015,000.00 (U.S.) for the development and repair of the software. (Id. ¶ 14.)  It adds that the software, which remains "plagued with problems," has caused Williams Solutions to suffer "severe harm to [its] business reputation."  (Id.)

The complaint includes five causes of action.  (See generally Compl., filing 1, Ex. A.) Count I, which is labeled "Breach of Contract," alleges that Cambian failed to perform adequately under the terms of the supply arrangement and the underlying Contract Work Authorizations.  (See id. ¶¶ 15-17.)  Count II, which is labeled "Breach of the Implied Warranty of Merchantability," alleges that Cambian's "grossly inadequate development of the Optometry Software and failure to sufficiently repair these inadequacies constitutes a deviation from the requisite standard of merchantability."  (See id. ¶¶ 18-20.)  Count III, which is labeled "Breach of the Implied Warranty of Fitness for a Particular Purpose," alleges, in essence, that Williams Solutions reasonably relied upon Cambian's knowledge and skill in the development of software suitable "for the particular purpose of use by optometry businesses," and Cambian failed to develop such software despite its "specific knowledge" that the software would be used for this particular purpose.  (See id. ¶¶ 21-25.)  Count IV, which is labeled "Unjust Enrichment," alleges

that in light of Cambian's failure to develop adequate optometry software, it ought to repay the money it received from Williams Solutions.  (See id. ¶¶ 26-29.)  Count V, which is labeled "Fraudulent Inducement," alleges that Cambian and Dostie made certain material misrepresentations that "were knowingly false or recklessly made without knowledge concerning the[ir] truth," that Cambian and Dostie intended for Williams Solutions to rely on its misrepresentations, and that Williams Solutions suffered harm after reasonably relying on the misrepresentations.  (See id. ¶¶ 30-35.)

Cambian has moved to dismiss Count IV "for failure to state a claim," and Cambian and Dostie have moved to dismiss Count V "for failure to state a claim with sufficient particularity." (Filing 16.)


## II.   STANDARD OF REVIEW

"To survive a Rule 12(b)(6) motion to dismiss, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests."  Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). "The rule does not require great detail, but the facts alleged 'must be enough to raise a right to relief above the speculative level' and must 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555, 570).

In addition, Federal Rule of Civil Procedure Rule 9(b) provides that "circumstances constituting fraud be pleaded with particularity."  Drobnak, 561 F.3d at 783.  The Eighth Circuit instructs that Rule 9(b) is to be interpreted "'in harmony with the principles of notice pleading,' and to satisfy [the rule], the complaint must allege 'such matters as the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'"  Id. (quoting Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002)).

> In other words, the complaint must plead the "who, what, where, when, and how" of the alleged fraud.  This higher degree of notice "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations."

Id. (citations omitted).  Thus, "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  Drobnak, 561 F.3d at 783 (citation omitted). It should be noted, however, that although "a party must state with particularity the circumstances constituting fraud," "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

### III.   ANALYSIS

As noted above, the defendants have argued that Counts IV and V of the complaint must be dismissed.  I shall analyze the defendants' arguments in turn.

### A.   Count IV (Unjust Enrichment)

The defendants argue that Count IV must be dismissed because the plaintiff's breach of contract claim and unjust enrichment claim are "facially incompatible."  (Defs.' Br., filing 17, at 5.)  More specifically, the defendants argue that dismissal is appropriate because the plaintiff has not pleaded breach of contract and unjust enrichment "in the alternative," and because the plaintiff has failed to allege "facts supporting the presence of an 'implied' contractual relationship that is distinct and separate from the express contract it has pled."  (Id. at 6.)  I agree.

"Facial incompatibility," standing alone, does not warrant dismissal of the plaintiff's unjust enrichment claim.  See Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").  Indeed, the Nebraska Supreme Court has "endorsed the practice of joining" both express and implied contract theories of recovery in the same complaint "where the facts arise out of the same transaction."  Professional Recruiters, Inc. v. Oliver, 456 N.W.2d 103, 107 (Neb. 1990) (quoting Assoc. Wrecking & Salvage Co. v. Wiekhorst Bros. Excavating & Equipment Co., 424 N.W.2d 343, 349 (Neb. 1988)).  Unjust enrichment, however, is not "a viable theory when an enforceable contract exists between the parties and the contract governs the damages at issue."  Folgers Architects Ltd. v. Kerns, 633 N.W.2d 114, 128 (Neb. 2001).  See also Washa v. Miller, 546 N.W.2d 813, 818-19 (Neb. 1996) ("The doctrine of unjust enrichment is recognized only in the absence of an agreement between the parties."); Assoc. Wrecking & Salvage, 424 N.W.2d at 348 ("Certainly, it is true that an implied contract cannot arise where an enforceable contract exists between the parties as to the

5

same subject matter and a conflict would thereby result.")  This is not to say that a plaintiff can never recover under both an unjust enrichment claim and a breach of contract claim in the same case.  See, e.g., Assoc. Wrecking & Salvage Co., 424 N.W.2d at 348, 349.  For example, "[a]n implied agreement may be given effect where it is based on the subsequent conduct of the parties not covered by the express contract."  Id. (quoting 17 C.J.S. Contracts § 5 at 566 (1963)).  In other words, both implied contract and express contract theories of recovery can be pursued simultaneously when the implied contract claim is based on "extra work" that is not encompassed by the contract.  See id.  In summary, a complaint may properly allege both express and implied contract theories of recovery, and the two theories may be pursued "in the alternative," as in as in Oliver, 456 N.W.2d at 106-09, or simultaneously, if the implied contract is based on a conferral of benefits that was not covered by an express contract, see Assoc. Wrecking & Salvage, 424 N.W.2d at 348.  But unjust enrichment is not a viable theory when an enforceable contract governs the damages at issue.

In the instant case, the complaint does not allege any facts suggesting that the plaintiff paid funds to the defendants that were not covered by an express contract.  On the contrary, the complaint states that "all work performed by Cambian would be governed by 'Call-ups' as memorialized in underlying Contract Work Authorization agreements," (Compl., filing 1, Ex. A, ¶ 8), and I note that this allegation has been expressly incorporated in to the plaintiff's unjust enrichment claim, (see id. ¶ 26).  The plaintiff's unjust enrichment claim also incorporates allegations stating that the Cambian's failure to provide satisfactory optometry software not only provides the basis for the unjust enrichment claim, but also amounts to a breach of the supply arrangement and Contract Work Authorization agreements.  (See id. ¶ ¶ 15-17, 26-29.)  Because the complaint alleges that express contracts govern the damages at issue in Count IV, unjust enrichment is not a viable theory, and I must conclude that Count IV fails to state a claim upon which relief may be granted.

The plaintiff argues that "it is apparent from the face of [the] Complaint that [the] cause of action for unjust enrichment is based upon an implied agreement."  (Pl.'s Br., filing 19, at 2.) I disagree.  As I noted above, the complaint does not allege that the plaintiff made a payment to the defendants that was not covered by an express contract; rather, the unjust enrichment claim

includes allegations that all of Cambian's work would be governed by Contract Work Authorization agreements and that Cambian's failure to provide adequate software amounted to a breach these agreements.

The plaintiff also argues,

> Plaintiff has pled that Cambian received in excess of $1,015,000.00 from Plaintiff to develop optometry software, and that Cambian inequitably retained such monetary benefit. In the event it is determined such funds were not remitted to Cambian pursuant to an express agreement, it necessarily follows that Plaintiff paid Cambian under an implied agreement; otherwise, there is no reasonable explanation why Plaintiff paid Cambian in excess of $1,015,000.00.

(Id. at 2-3.) I take it that the plaintiff means that its unjust enrichment and breach of contract claims are intended to be "alternative" theories of recovery. As drafted, however, the complaint does not frame the unjust enrichment claim as an "alternative to [the plaintiff's] express contract theory." Oliver, 456 N.W.2d at 107. On the contrary, the complaint appears to blend the two theories.[2]

To avoid dismissal of an unjust enrichment claim, a plaintiff's complaint must state factual allegations that are "enough to raise a right to relief" on an implied contract theory "above the speculative level," Twombly, 550 U.S. at 555, and the plaintiff has failed to do so here. There are no allegations of any work or payments not covered by an express contract; instead, the unjust enrichment claim incorporates facts and allegations establishing that unjust enrichment is not a viable theory. Count IV must therefore be dismissed.

### B.    Count V (Fraudulent Inducement)

The defendants argue next that Count V must be dismissed because the complaint "does not fairly identify the 'who, what, when, where, and how' of the fraud, and because 'conclusory

---

[2]I note parenthetically that because there are no allegations that Cambian or Dostie performed work not covered by an express contract, the complaint fails to allege the sort of unjust enrichment claim that may be brought simultaneously with a breach of contract claim. In other words, the complaint's blending of express and implied contract claims does not yield the sort of "simultaneous" claim that might survive dismissal. Cf. Dubinsky v. Mermart, LLC, No. 4:08-CV-1806 (CEJ), 2009 WL 1011503, at *5 (E.D. Mo. April 15, 2009) (dismissing the plaintiffs' unjust enrichment claim because they failed "to allege that they conferred any benefit upon defendant apart from those benefits governed exclusively by the contracts attached to plaintiffs' petition and relied upon by plaintiffs.").

allegations that a defendant's conduct was fraudulent and deceptive are not sufficient.'" (Defs.' Br., filing 17, at 10-11 (citation omitted).)  I disagree.

The complaint, read as a whole, states that on or about April 21, 2005, Dostie made a proposal on behalf of Cambian that included the following representations that the defendants made with knowledge of their falsity or with reckless disregard for their truth: 1) Cambian and Dostie "would be able to prepare a software program that was cheap to maintain and deploy with additional features not available in the software program Williams Solutions was utilizing at the time"; 2) "development of the Optometry Software would be cost-efficient and provide a strong software base for Williams Solutions to gain greater market acceptance"; 3) "the Optometry Software would be completed ahead of schedule"; 4) "Williams Solutions would not incur all costs associated"; 5) "the Optometry Software would be developed within six months of entering into the [supply arrangement]"; and 6) "the total cost of developing the Optometry Software would be approximately $324,000.00 C.D."  (Compl., filing 1, Ex. A, ¶¶ 6, 31-33.)  The complaint adds that these misrepresentations induced Williams Solutions to enter into the supply arrangement with Cambian, and it also alleges that the defendants' knowledge of (or reckless disregard for) the falsity of their representations is demonstrated by the fact that the software remains "burdened with numerous inherent difficulties" more than three years after the November 2005 completion date.  (See id. ¶¶ 32, 34.)  I find that the complaint alleges adequately the "who, what, when, where, and how" of the alleged fraud, and clearly it cannot be said that the plaintiff's "fraudulent misrepresentation" claim is based on nothing more than a conclusory allegation that the defendants acted fraudulently and deceptively.  See Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009).

The defendants argue that Count V fails to state a claim upon which relief may be granted because the complaint lacks specific facts establishing the defendants' "knowledge of falsity." (Defs.' Br., filing 17, at 10 (citing Asbury Square, L.L.C. v. Amoco Oil Co., 218 F.R.D. 183, 188 (S.D. Iowa 2003) and Brown v.North Central F.S., Inc., 987 F. Supp 1150, 1153 (N.D. Iowa 1997); see also Defs.' Reply Br., filing 20, at 4.)  I disagree.  In Ethanol Capital Management, L.L.C., v. DeWeese Biofuels, L.L.C., No. 4:06CV3176, 2006 WL 3780409, at *7 (D. Neb. Dec. 20, 2006), I considered and rejected the same argument that the defendants raise here, see

8

Ethanol Capital Management, L.L.C, No. 4:06CV3176, Filing No. 33 at 14 (quoting Asbury Square, L.L.C., 218 F.R.D. at 188). I stated:

> I am not persuaded . . . that the plaintiff is required to plead specific facts concerning the defendants' state of mind. Rule 9(b) states that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Thus, Rule 9(b)'s particularity requirement does not apply to averments concerning the defendants' "condition of mind" in an ordinary fraud case. Instead, as the Eighth Circuit has consistently instructed, the particularity requirement applies to "the circumstances constituting fraud," which "include such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Commercial Property Inv., Inc. v. Quality Inns Intern., Inc., 61 F.3d 639, 644 (8th Cir. 1995) (citation omitted); see also United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006).
>
> A different rule applies in securities cases. Under the Private Securities Litigation Reform Act (PSLRA), scienter must be pleaded with particularity. In re Navarre Corp. Securities Litig., 299 F.3d 735, 742 (8th Cir. 2002). Even before the enactment of the PSLRA, "some circuits [applied] a special standard in securities cases, requiring pleading of facts that would indicate scienter, rather than the mere conclusion that the defendant acted with scienter[.]" Florida State Bd. of Admin. v. Green Tree Financial Corp., 270 F.3d 645, 654-55 (8th Cir. 2001) (citing Romani v. Shearson, Lehman, Hutton, 929 F.2d 875, 878 (1st Cir. 1991); In re Time Warner Inc. Securities Litig., 9 F.3d 259, 268 (2d Cir. 1993)). Asbury Square, which the defendants cite for the proposition that "the party pleading fraud 'must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading,'" extends the standard used in securities cases to cases of ordinary fraud. See Asbury Square, L.L.C. v. Amoco Oil Co., 218 F.R.D. 183, 188 (S.D. Iowa 2003) (citing Lucia v. Prospect Street High Income Portfolio, Inc., 36 F.3d 170, 174 (1st Cir.1994); Brown v. North Central F.S. Inc., 987 F. Supp. 1150, 1155 (N.D. Iowa 1997)). I respectfully disagree with this extension, and instead I will adhere to the rule set forth in Rule 9(b) and reaffirmed by the Eighth Circuit: In non-securities fraud cases, "condition of mind" may be averred generally. In re Navarre Corp. Securities Litig., 299 F .3d at 742; Fed. R. Civ. P. 9(b).

Ethanol Capital Management, L.L.C., No. 4:06CV3176, 2006 WL 3780409, at *7. The defendants have not persuaded me that my analysis in Ethanol Capital Management is incorrect. Count V will not be dismissed.

**IT IS ORDERED** that:

1.     the defendants' motion to dismiss, filing 16, is granted in part;

2.     Count IV of the complaint is dismissed without prejudice; and

3.     the defendant's motion to dismiss is otherwise denied.

Dated June 10, 2009.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge

10